America, et al. Argument not to exceed 15 minutes per side. Ms. Ferris, you may proceed for the appellant. Good morning. Good morning, Your Honor. May it please the Court. This is the second time that this case has come before this Court. The last time, this Court... Is there any rebuttal time? Yes, three minutes, Your Honor. The last time that this case came before this Court, this Court held that it would not rubber stamp a trial court's award of prejudgment interest. The trial court must give reasons for its award, and the award must stand or fall on those reasons alone. Today, we are here because the trial court increased its original award by nearly $5 million. That new award is based on clear errors of law and fact, and it is inequitable to JTV on its face. This Court should reverse. With this Court's permission, I would like to address three points today. And the first is the grounds for reversal. This Court should reverse for two simple reasons. The trial court does not have discretion to make an error of law, and it also does not have discretion to make a clear error of fact, but both of those occurred here. To begin, the Court committed legal error when it found that Tennessee law prohibited the Court from discounting a prejudgment interest award due to its own delays. The simple fact is that no Tennessee Supreme Court case prohibits a trial court from considering any such thing. In fact, we've cited many Tennessee intermediate court cases in our briefs which did consider court cause delays in ultimately reducing the award of prejudgment interest that was paid to the plaintiff. But here we know that this error of law prejudiced Sterling. This is not what the Court would have done but for thinking that Tennessee law had tied its hands. And we know that because of the many statements in the Court's order to this effect. The Court said that because the Court does not have the flexibility to discount a prejudgment interest award due to its own delays, the Court awards JTV prejudgment interest at a rate of 5.4%. The Court went on to lament that it is unfortunate that it cannot reduce a prejudgment interest award based on the Court's delay. And it also said that requiring Sterling to pay prejudgment interest for the entirety of the eight-year period this case was pending is inequitable given the Court's role in the delay. Now... And then it also says that you're being unjustly enriched by having the money all this time. When I read that, like in the very next two lines down, I just wasn't sure where the district court was going. There's a little bit of confusion within the language of the order, but the overwhelming sentiment is that the Court thought it didn't even have the discretion to consider how to treat the Court's, the Court caused delay here. And the Court was clearly very concerned about it. It spent four pages of the ten-page order just recounting the many Court delays that occurred in this case. And then it also said that the Court's delay accounted for most of the elapsed time in this long litigation. So there's every reason to believe that but for this error of law that the Court would have reduced the amount of prejudgment interest. Now the second error in... Have you all talked about, when you're asking for a second remand on the issue of prejudgment interest, have the parties talked about settling this matter? I believe there have been some settlement discussions, but we're here today, Your Honor. Have you had any mediation in our court? No, we have not had a Sixth Circuit mediation in this court. So returning to the reasons for reversal, that brings us to the second ground, which is the Court awarded a rate of 5.4% based on uncontroverted evidence that JTV's average cost of debt capital was 5.4%. The record is clear here that there was no such uncontroverted evidence. To begin, that evidence was controverted. Sterling put in two declarations from a CPA with more than 40 years of experience explaining why this was wrong. Sterling put in evidence of what JTV was actually paying on its debt during this period. And then it also put in evidence that when you consider average cost of debt capital, which is an industry term, you don't consider things like periods where the case wasn't actually going yet. You don't consider things like fees and warrants. And so for that reason... Did you provide a specific alternative number? On cost of debt capital, what we provided was what JTV had actually been paying during this period. And the reason that we couldn't do a separate cost of debt capital analysis is this was all submitted after the fact. This was submitted under Rule 59, and the Court rejected it as untimely. But also these cost of debt capital documents that... That last part, are you saying that your controversion was considered by the Court untimely? So in one sense, it wasn't controverted because... No, no, Your Honor. I'm sorry. The Court considered JTV's evidence of cost of debt capital, which only came in on a Rule 59 motion. The Court considered that evidence to be untimely. It rejected the Rule 59 motion. It said that this wasn't newly discovered evidence. There's no reason you could have... Right. So that... That's with respect... So did that, in effect, ask for even more than 5.4? That was the first time the 5.4 figure had ever come up. That was the very first evidence of cost of debt capital. So you're saying they rejected their evidence as untimely, but nevertheless accepted their number? Yes. In the second order after it went up to this Court and came back down, the Court simply made an oversight. It said that there was uncontroverted evidence, that 5.4... I'm just asking you, all right, you attacked their numbers. Did you give an ultimate alternative number? What we gave the Court was options. We said that you should award no prejudgment interest due to the equities. We said you should award 1.22 because considering multiple different factors, that would be fair. We also said, you know, if you want to look at what JTV actually paid, we provided evidence of what JTV actually paid. But this notion of average cost of debt capital, the first time that phrase is even mentioned is... You're still not telling me, did you give a number or not give a number? We gave the Court an option of numbers. Which was? Which was 1.22 and also we put forth what JTV had actually been paying during this period. Which was? Which was anything from 1.69 to 2.24, we've included. That was attached to document 854, I believe, but we did provide that evidence to the Court. But not only was this evidence controverted, it was ultimately... In the initial order denying the Rule 59 motion, the Court said that this evidence could have... There's no reason it couldn't have come in earlier and the only reason it didn't come in earlier was because of the strategic choices that JTV made. It wanted the Court to award 10%. And so it's entire theory of prejudgment interest was you should award the max because that's what Tennessee courts do. When that strategy failed, it then tried to present this cost of debt capital evidence through an untimely Rule 59E motion. So in short, the evidence wasn't uncontroverted. Your argument would be that the 1.22% interest amount would be in accordance with Tennessee law? Yes. Yes, Your Honor. That would be in accordance with Tennessee law. And where do you take that from? What makes that in accordance with Tennessee law? Here, we know that this accords with Tennessee law because of what the trial court said in its initial word of prejudgment interest. It said, while conservative, a prejudgment interest rate of 1.22% adequately contemplates the plaintiff for the loss of the use of its funds during the pendency of this litigation. And that's at Record 879, Page ID. What would be other figures that would be appropriate under Tennessee law? Because it's a discretionary call based on various factors, right? It is discretionary. That's correct, Your Honor. But the key here is that this Court has to look at the reasons the Court gave. And the reasons for the new award are clearly erroneous, as a matter of fact, and legally erroneous. The part that you were just quoting that ended up with 1.22, what is that from? That's from the order denying the Rule 59 motion. That's Docket 879, Page ID 31087. So that's where that 1.22% comes from. And this is a compromised number. The Court is looking at different factors under Tennessee law, particularly the role of court-caused delays and delays not caused by Sterling. And so when it comes back up to this Court, this Court says, show your work. It says, you haven't given us enough reasoning to support this 1.22 figure. So what you were quoting from was the earlier ruling. Yes, from the earlier ruling that the Court found was equitable. It was thrown out, but it wasn't thrown out because the number itself was bad. The Court said, go back and show your work, give us some more analysis. But neither did they say it was good. The Court actually, well, the Court gave no indication that the number itself was flawed. But what it did say, what the trial court said, and the trial court was in the best position to assess what was going on here, the Court said that this is what is equitable and this is, quote, this adequately compensates the plaintiff for the loss of the use of its funds during the pendency of the litigation. So what we have is a prior award that the Court found equitable, that the Court found adequate, and we have a new award that the Court has expressly found to be inequitable to JTV for reasons that are just frankly incorrect, both on the law and on the record. So with that, I'd like to turn to what this Court should do. This Court has discretion to enter its own award of pre-judgment interest if it chooses to do so, or it can remand. If it remands, this Court should instruct the Court to consider the factors that are held up time and time again in cases like Myatt, in cases like Hunter, in cases like Baptist Physician Hospital. And the two mandatory factors that the Court considers are the certainty, or whether damages are certain, and whether liability is certain. Could you tell us what the authority is for our Court to enter its own award? Yes, and that case is EEOC versus Williams, it's cited in our reply brief. Let me pull it up. That would be a federal pre-judgment award, not a pre-judgment interest award under Tennessee law, correct? So that is EEOC versus Wilson Metal Casket Company, but there are many cases in Tennessee courts of appeals where the Court simply shaves off interest if it thinks it's too high. And one of those cases... Yeah, can you give us an example? Yes, that would be the Wilder case. There, the Court reduced the judgment award by two years of delay, of court-caused delay. So that would be a basis for the Court to enter its own award here. I see that my time is up. All right, thank you. Thank you. May it please the Court. One point that I think is lost in the argument my friend on the other side is making is that in a holistic sense, this award is not in any way inequitable to Sterling. Sterling as a defendant had the benefit of this use of money during the period of time when JTV was deprived of it. It's not like this money was an escrow. Sterling was able to use this money for its benefit, this $13 million that it owed JTV as a consequence of its wrongdoing. Tennessee pre-judgment interest law recognizes that the lost time value of money is a compensable harm and that fairness in almost all cases requires the plaintiff to be fully compensated for the lost time value of its money during the period it was deprived of its money while the defendant, on the other hand, had the use of that money. Well, the calculation is going to cover the entire time that the deprivation occurred. But that doesn't, you could look at it and say, well, the amount of the interest still has to be determined notwithstanding that you're going to cover the entire time frame, so to speak. That's correct, Your Honor. And the district court selection of a pre-judgment interest rate in this case was perfectly reasonable, well within its discretion to choose the 5.4%. That's well grounded in the evidence presented to it and it is the amount that JTV at a minimum would have had to pay to borrow the money during the period that it was without the money. But, we review not only the end amount, we review the reasoning, both the factual findings and the legal basis for the award. Correct, Your Honor. We just can't say, we can't disregard what the district court said in arriving at the bottom line number. Absolutely, Your Honor, and the district court's reasoning here was perfectly correct. Under Tennessee law, when the, it's inappropriate to deprive the plaintiff of money that it is entitled to to make it whole solely because of court-caused delays. The cases, the binding Tennessee law, the cases that Sterling relies on involved situations where the parties contributed to the delays. That's not the case, that was not a finding made by the district court in this case despite having these arguments made to it over and over again by Sterling in the court below. The Tennessee rule is that delay is not a reason to deprive the plaintiff of being made whole based on a reasonable prejudgment interest rate unless it, in fact, unreasonably contributed to its own delays. And to do otherwise would really be to create a windfall to the defendant who had the use of this money during that same period of time, and if anything, Your Honor, we submitted evidence to the court that 5.4% is the minimum that would be adequate to compensate the defendant in this case because there were three years during this prejudgment interest period during the recession when JTV couldn't even get additional borrowing for less than 10%. You know, the only issue is not the deprivation of money to the party who is awarded the interest. I mean, there are other factors to be considered under Tennessee law. Correct. I mean, you know, the certainty of the liability, you know, there's a number of factors, so it's not all about you and your loss of money, right? That's correct, Your Honor, and I would submit that the court considered a number of different factors in this case, and there's no requirement that it explicitly address specifically uncertainty of the claim. I would point the court to the Tennessee Supreme Court's decision in Mayant which recognized with approval that typically courts do not discuss, the Tennessee courts do not discuss that specific, those two specific factors, because more often than not, it's not a thumb on the scale, otherwise you would really be limited to awarding prejudgment interest in the liquidated damages context. So those particular factors, just because they're not explicitly in the opinion doesn't mean they're not considered, and there is no requirement under Tennessee law that they be explicitly considered. In addition to the Mayant case, I'd point the court to the general construction case and the Christmas lumber case we cited in our briefs. Those cases are relatively recent Tennessee Court of Appeals cases. They do not discuss those specific factors. There are any number of many non-dispositive factors that the court can consider. It doesn't have to go through each one of them to have reached a reasoned decision. In this case, the court... What about the fact that under Tennessee law, the court is supposed to take into account the equitable nature of the award, and the district court in discussing the 5.7 said that it would be inequitable to require Sterling to pay prejudgment interest for the entirety of the eight years the case was pending, and so, but it said that the court doesn't have flexibility to discount the award due to its own delays, but it did say that it thought the award was inequitable, and the equitable nature of the award is a factor under Tennessee law. What are we to make of that? Your Honor, if you read that, Sterling wants you to read that statement in isolation. If you read it in context, and you follow the district court's full analysis, it's tracking the general construction analysis, which basically says, this may seem unfair too specifically to the defendant, but at the end of the day, we have to decide what is fair overall. Well, it seems to me in reading it, it is more like a comment on the district court's belief that it was unable to consider the delay in making the award, and he said, therefore, the result is unfair, inequitable, and I don't see any other way to read that. Your Honor, I disagree. I think the court goes into detail about the remedial goal and how, in order to be fair to JTV, it has to put it back into the position it would have been and pay the just compensation for the $13 million that it was deprived of during the eight years it took to get the case to trial. Well, you're concerned about the equities to your client, but the court made a comment that indicated that the award could not be equitable to Sterling because of its misimpression about the things it could consider. Your Honor, I disagree that it was a misperception about what it could consider under Tennessee law. There are no binding Tennessee cases concluding that a solely court-caused delay is ground to deprive. I believe there are intermediate appellate court decisions in Tennessee that do consider court delay. Do you disagree with that? I do disagree, Your Honor. The Wilder case that they rely on, it predated the Myant decision in the Tennessee Supreme Court, which reset the entire legal framework for analyzing prejudgment interest and explained that the focus, the starting point, is what is going to fully compensate the plaintiff, and fairness in almost all cases will require that full compensation. The Wilder case predates Myant, and Myant actually cites that case and notes that the abuse of discretion that was being corrected in that decision was more narrow. It was specifically running the prejudgment interest period from an earlier date, the date of loss, that that was the abuse of discretion. It effectively narrowed Wilder and didn't acknowledge the court-caused delay component. Their other case, Varner, is an unpublished case, and it involved a six-year period where the plaintiff failed to prosecute the case itself. All the other cases they talk about, Foster-Henderson, Harrison, they all involve findings that the party unreasonably delayed the proceedings themselves. The Hunter case they rely on, there's no finding in that case that the court caused the delays. If you cut through to the actual cases, they don't have authority. It would have been an abuse of discretion for the district court in this case to look at these facts and circumstances and conclude it did have the flexibility to discount the award. Counsel, this discussion about the 5.4% and where it comes from and whether it was uncontroverted, can you give me your take on that? Because I didn't quite get the business with your evidence being rejected as untimely and their attack on it. So I sort of understood it, but I wanted to see what your take on it was. And you might roll into that, that if hypothetically we were to say, this is all a mess, we're going to remand, we're going to tell the lower court what the right law is and take another crack at it, could you folks make a case for more than 5.4%? So fit that into your answer. A couple points to respond to that, Your Honor. First, the district court never struck the evidence. It concluded on the Rule 59 posture. It wasn't newly discovered. But this court entered a remand. The result was excluding the evidence. The result was that under Rule 59, it wasn't newly discovered. But this court entered a remand to generally reconsider the predetermined interest issue. The court could have taken new evidence if it wanted. There was no reason why it couldn't look at the evidence in the record, which is what we had argued to the Court of Appeals. Am I right? It nevertheless came out with the 5.4% that you were arguing for? That's on remand? Yes. That's correct. We've got to keep the two straight. My argument was just that there was no abuse of discretion in the district court considering that evidence. There may be no abuse of discretion in the district court adopting that figure, but I don't think it's proper to say that that was record evidence when it was excluded on the basis it was not newly discovered. Your motion was denied, right? Our motion to alter amendment was denied. The court did not say that it wasn't part of the record. In resetting on remand, the court was asked to do a more thorough analysis. I think that it would have been an abuse of discretion not to consider all the evidence in front of it. In the court, there was no finding on appeal that that evidence was somehow out of the case. Sorry, Your Honor. Have you all thought about the fact that it might be best to try to settle this case? Your Honor, one thing I would point out, and this goes also to both of the questions here, is that Sterling hasn't offered anything new for the court to consider on remand or anything new in terms of a proposal. They're still advocating for one ... Well, the court doesn't get involved in settlement, so any proposal ... I mean, have you all talked? Or might it be good for us to consider having a mediator talk to you? There's an incentive to be aware of here, Your Honor, which is that delay works to the benefit of the defendant. In the three years since the verdict, there has been ... Well, the time period during which you've been deprived of the use of your money lengthens the longer it takes. So I mean, there should be some incentive for both parties. I mean, Sterling would doubtless like to get this behind it, and so would you. But may I make a point? The post-judgment interest rate, regardless of how pre-judgment interest is resolved, is 1.22%. So in the three-year period that this sits here, and when there's another remand and there's more proceedings, and there's an incentive for Sterling not to make a reasonable settlement offer, because they are able to use this money and generate a rate of return that is much greater than the 1.22 post-judgment interest rate that will apply regardless of what this court says or the district court says about the pre-judgment interest rate. So my point is, I totally understand your sentiment, Your Honor. I would submit that the best and fastest way to resolution is for this court to affirm, and there's nothing new for the ... remanded, then what would be the best course? Your Honor, the court would need specific instruction that, again, the purpose of pre-judgment interest is to fully compensate. Would a remand be better for you than a possible settlement? I think that's a difficult ... It's difficult for me to answer that because, as I said, the incentives are on the side of Sterling not agreeing to a reasonable settlement and to continue the delay. I would also submit that Sterling hasn't given us anything new that would warrant a remand in this case. They're still arguing 1.22, which is completely unmoored from the record. I think it's useful to point out that the decision that was reversed before is a mechanical application, and the seven-page decision we have here, they couldn't be more different. We have a nuanced, reasoned opinion that considers the remedial goal of pre-judgment interest avoiding a windfall to the defendant, which is an appropriate factor, the lost interest value of the money based on uncontroverted evidence, which I'd like to address for a moment, the prime interest rate at issue, the inflation rate, the length of the litigation, the role of the court versus the parties. I think to reverse, as an abuse of discretion, that decision under these facts and under the correct utilization of Tennessee law would be to invite excessive litigation over pre-judgment interest, which is not something that this court is typically interested in inviting, given the abuse of discretion standard. I'd like to briefly address the point that the evidence was not uncovered. I think, really, you're saying that in terms of saying there should be settlement discussions or we should remand further proceedings and all that, that the court should take into account the fact that all this litigation has been going on for eight years and so the interest is exploding here and all this needs to be brought to a conclusion. It does. It needs to be brought to a close. There's no reason not to. There's no basis in the district court's opinion to conclude that the result it reached wasn't consistent with the law and consistent with the facts. On the point of it being uncontroverted, there's been no dispute that the interest rates that were used to calculate JTV's 5.4% are substantiated by both sides. There's been no dispute that the additional costs JTV put forward were actually incurred to borrow money. And in fact, there has been no alternative number put forward to answer Judge Bach's question. I'd point the court to docket 854.1. I did ask a sort of specific question, was if it were to be remanded, would you try to make a case for more than 5.4? Absolutely. And secondly, isn't it correct, though, that they controvert in the sense, I mean, in terms of what papers are, that, you know, you wasted money, you could have done better, et cetera. I mean, it's not that they just said, oh, yes, 5.4 is fine. I mean, they did attack the ideas. They did not controvert, Your Honor. May I? I see my time's expired. Go ahead. They did not controvert the facts supporting that number, the fact that what JTV paid in interest, what the costs were. But they did attack, saying, well, maybe you shouldn't have paid that much, because They had different factors. They were profligate and so on. That's all I'm saying, is that if this went back, the whole ballgame would be up in the air. They could bring that in. You could ask for more, you know, they would presumably follow the correct standard that we tell them, but the game would be afoot. But the language in the district court's opinion is uncontroverted evidence. It's not uncontroverted argument. Okay. All right. And with that, Your Honor, we would ask the court to bring this 11-year litigation to a close, to not allow for continued delay, and to affirm the district court's decision in this case. Thank you very much. Rebuttal. Thank you, Your Honors. On behalf of Sterling and IBM, I would just begin to say that we would be happy to go to mediation if that's what this court decides would be in the best interest of the parties. You must understand, I was the only one in the panel asking that question. I don't speak for the panel. Well, thank you, Judge Gibbons, but yes, we would be more than happy to do that. I'd like to push back on a few points that JTV has made today, and the first is that court always has to award at least cost of debt capital to satisfy principles of equity. That is simply not true, and we know that because Tennessee law does not even require an award of prejudgment interest at all. It makes the award discretionary, and in fact, even since my end, there have been a number of cases in which the Tennessee Supreme Court and this court have affirmed awards of zero interest at all. You have the Hunter decision from the Tennessee Supreme Court, 2005. You have the Boynton decision from this court, 2014, and also Alexander, which was a zero prejudgment interest award. It issued only three weeks after Myatt. Myatt certainly did not purport to rewrite Tennessee law, the statute itself, to say that a court must always award prejudgment interest. That's simply not true. Also, JTV has misstated a few cases that I'd encourage this court to read closely. Varner was not about party cause delay. Varner was a case where the court actually had the case for about 17 years, and the special master held onto it for seven years. When the trial court ultimately carved off seven years off of the prejudgment interest period, it did that under principles of equity, because equity is a two-way street. It's not just about what is fair to the plaintiff. It's also about what is fair to the dependent, and but for the court's error of law, there's every reason to think that the court would have made a lower award. If this court does send back for remand, this court should instruct that the trial court should follow the framework laid out in Myatt, laid out in Hunter. It should consider that the goal of prejudgment interest is to do equity. This court is to consider the two mandatory factors, whether the obligation and the damages themselves were certain. Here, JTV has been all over the map, even as recent as its brief in this case. It still insists that it has $50 million in damages. When this court confirmed that it only has 13, had JTV been reasonable from the beginning and said this is a $13 million case, we probably wouldn't be here. That is exactly the type of thing that the court is supposed to consider when it talks about equity and what should be done with prejudgment interest. The purpose is to compensate, not too much, not too little, but never to punish. Thank you very much. We would request that this court reverse. Thank you very much. The case is submitted. There being no further arguments, the court may close.